IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

REGINALD JOHNSON
    *Plaintiff*,

v.

MARYLAND DEPARTMENT OF
TRANSPORTATION, *et al.*
    *Defendants*.

Civil Action No. ELH-18-1059

**MEMORANDUM OPINION**

    Plaintiff Reginald Johnson has filed a civil rights suit against five defendants: the Maryland Department of Transportation ("MDOT" or the "Department"), doing business as the Maryland Transit Administration ("MTA"); "John Doe #1," a Maryland Transportation Authority ("MDTA") officer; "John Doe #2," an MDTA supervisor; "Jane Doe #3," an MDTA employee; and "John Doe #4," an MDTA commissioner (collectively, the "Doe Defendants"). ECF 1 (the "Complaint").[1] Johnson alleges that on May 13, 2015, MDTA officers stopped him for speeding (ECF 1, ¶¶ 15, 16) and then unlawfully detained and arrested him because he was "a possible fugitive from Albuquerque, New Mexico." *Id*. ¶ 26.

    The suit was filed pursuant to 42 U.S.C. § 1983, asserting violations of Johnson's Fourth Amendment right to be free from unreasonable searches and seizures; his Fifth and Fourteenth Amendment rights to equal protection and substantive due process; and his Eighth Amendment right to be free from cruel and unusual punishment. *Id*. ¶¶ 50-60. Moreover, plaintiff asserts that

---

[1] In the caption of the suit, plaintiff identifies the Doe Defendants as employees of the "Maryland Transportation Authority." In the text of the Complaint, he asserts, alternatively, that they are employees of the Maryland Transit Administration and the Maryland Transportation Authority. *See* ECF 1, ¶¶ 4-8, 15.

the MTA is liable because it maintains unconstitutional customs and policies that led to the violation of plaintiff's constitutional rights. *See* ECF 1, ¶¶ 4, 50-54.

Pursuant to Fed. R. Civ. P. 12(b)(6), MDOT, MTA, and MDTA (collectively, the "State") have moved to dismiss (ECF 3), supported by a memorandum of law (ECF 3-1) (collectively, the "Motion").[2] The State asserts that the Eleventh Amendment bars this suit, and that Johnson fails to state a claim upon which relief may be granted. ECF 3 at 3-6. Johnson opposes the Motion. ECF 7 (the "Opposition"). He also seeks "limited discovery" to identify the Doe Defendants. The State has replied. ECF 17 (the "Reply").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion in part and deny it in part.

## I. Factual Background[3]

On May 13, 2015, at approximately 4:30 p.m., Johnson was driving on Interstate 95 when he was stopped by John Doe #1, an officer employed by MDTA. ECF 1, ¶ 15. According to the Complaint, John Doe #1 told plaintiff that he was speeding, and that "he would need to see [plaintiff's] license and registration." *Id*. ¶ 16. Johnson "complied with John Doe #1's request." *Id*. ¶ 17. About three minutes later, "John Doe #1 came back to Plaintiff's car and asked him to step out." *Id*. ¶ 18. Again, Johnson "complied with John Doe #1's request." *Id*. ¶ 19.

---

[2] The Complaint seems to muddle the agencies involved in the alleged stop. For example, plaintiff has expressly sued the Department, d/b/a the Maryland Transit Administration. *See*, *e.g.*, ECF 1, caption; ECF 1, ¶ 4. But, in ECF 1, ¶ 15, he claims that the traffic stop was effected by an officer employed by the Maryland Transportation Authority. I assume, for this reason, that the Motion was filed on behalf of all three entities.

[3] The factual allegations are derived largely from the Complaint. Based on the procedural posture of the case, I must assume the truth of any well pleaded factual allegations. *See E.I. du Pont Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

John Doe #1 then "ask[ed] Plaintiff if he had ever been to New Mexico." *Id*. ¶ 20. Johnson responded that "he had not been to New Mexico." *Id*. ¶ 21. Johnson "proceeded to ask John Doe #1 if this was about another individual named Reginald Johnson." *Id*. ¶ 22. Johnson explained that "he had a similar problem trying to get his passport approximately four ('4') years before the stop." *Id*. Further, Johnson told John Doe #1 that the previous mix-up was resolved when he "brought documentation showing who he was, and the [official] had a picture of the 'other' Reginald Johnson." *Id*. ¶ 23. To this, John Doe #1 allegedly responded, "'Ok' or something to that effect and told Plaintiff to get back into the car." *Id*. ¶ 24.

Shortly thereafter, John Doe #1 "called for backup." *Id*. ¶ 25. After additional officers arrived at the scene, "Plaintiff was placed in handcuffs," and Johnson was told that "he was a possible fugitive from Albuquerque, New Mexico." *Id*. ¶ 26. Johnson "asked John Doe #1 if there [was] any way to get a picture of the 'other' Reginald Johnson because he believed that would clear everything up." *Id*. ¶ 27. Thereafter, Johnson was transported to the Baltimore City Central Booking and Intake Center ("Central Booking"). *Id*. ¶ 29.

Before Johnson was taken inside to Central Booking, "John Doe #1 said that if plaintiff's finger prints [sic] displayed 'no hits' that they would not hold him and that he would take Plaintiff back to his car." *Id*. ¶ 30. At Central Booking, Johnson "was fingerprinted and the monitor showed no hits." *Id*. ¶ 31. Nevertheless, John Doe #2, a supervisor, told Johnson that "they would have to keep him." *Id*. ¶ 32. Johnson avers that he again "asked officials to get the picture of the 'other' Reginald Johnson." *Id*. ¶ 33. According to Johnson, Jane Doe #3 then told him "something to the effect of 'It is you and you are a fugitive from New Mexico and you will see the commissioner after 12:00AM, so you can take it up with him.'" *Id*. ¶ 34.

Johnson states that his photo and additional fingerprints were taken, and he was then placed in a jail cell with another person. *Id*. ¶ 35. At approximately 1:00 a.m., Johnson met with the commissioner, John Doe #4, and Johnson asked him about the photo and the social security number. *Id*. ¶ 36. In response, John Doe #4 allegedly said "that he could not do anything about it and Plaintiff was a fugitive from New Mexico." *Id*. ¶ 37. Johnson asserts that John Doe #4 then asked Johnson "several questions about his occupation, marital status, income, and living arrangement." *Id*. ¶ 38. "John Doe #4 indicated that plaintiff would go before a judge in the morning at around 8:30AM to be extradited back to New Mexico." *Id*. ¶ 39. Johnson was then placed in a group cell "with about ten ('10') other inmates for several hours." *Id*. ¶ 40.

Later, Johnson "was given a psychological test, a prison suit, and breakfast." *Id*. ¶ 41. Then, he was taken to another area of Central Booking, where he was "placed in another cell with another person who had multiple convictions for drugs, armed robbery, and gun possession for the rest of the night." *Id*. ¶ 42.

In the morning, when Johnson was "supposed to appear before a judge," court officials told him that he "was not on the list." *Id*. ¶ 43. No one was able to explain to Johnson why his hearing was canceled. *Id*. ¶ 45. For several more hours, Johnson sat in the holding cell "until he was called out for officials to draw his blood for a syphilis determination." *Id*. ¶ 46. Once again, Johnson asked when he would see a judge, "but no one could tell Plaintiff anything." *Id*. ¶ 47.

The next day, on May 15, 2015, at approximately 8 p.m., Johnson was released, "without an apology." *Id*. ¶ 49. This suit followed on April 12, 2018. ECF 1.

Additional facts are included in the Discussion.

## II. Legal Standard

As noted, the State has moved to dismiss under Fed. R. Civ. P. 12(b)(6), for failure to state a claim. However, it also contends that plaintiff's claims are barred by sovereign immunity. *See* ECF 3-1. The Fourth Circuit recently reiterated that the defense of sovereign immunity is a jurisdictional bar, stating that "'sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.'" *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)); *see also* Fed. R. Civ. P. 12(h)(3) (stating that a court must dismiss an action if it lacks subject matter jurisdiction). Therefore, the State should have also brought the Motion under Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction.

Accordingly, the standards of review for Fed. R. Civ. P. 12(b)(1) and Rule 12(b)(6) are relevant.

### A. Rule 12(b)(1)

A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). "When a defendant makes a facial challenge to subject matter jurisdiction, 'the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.'" *Kerns*, 585 F.3d at 192 (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

A factual challenge, on the other hand, can also assert that facts outside the four corners of the complaint preclude the exercise of subject matter jurisdiction. *Durden*, 736 F.3d at 301. In considering a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009) ("Unless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' the district court may . . . resolve the jurisdictional facts in dispute by considering evidence . . . such as affidavits." (citation omitted)).

Here, with respect to the contention that plaintiff's claims are barred by Eleventh Amendment immunity, the Department seems to raise a facial challenge. Therefore, I shall assume the truth of Johnson's allegations.

### B.     Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short

and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ____, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs.,*

*Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Cmm'w of Va.*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quotation marks and citation omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis in *Goodman*).

### III. Discussion

The Complaint names as a defendant the MDOT, doing business as the MTA. *See* ECF 1. However, plaintiff's factual allegations are directed to MDTA, a separate unit within the MDOT.

- 8 -

*See* Md. Code (2015 Repl. Vol., 2017 Supp.), § 2-107(a)(3) of the Transportation Article ("Transp.").

The MDOT has "duties relating to the supervision, financing, construction, operation, maintenance, and repair of transportation facilities projects." Transp. § 4-204(a). The MDTA officers have "all powers granted to" a State police officer and may exercise these powers on "property owned, leased, or operated by or under the control" of the MTA, Maryland Aviation Administration, and Maryland Port Administration. *Id*. § 4-208(a), (b).

### A. Eleventh Amendment

The State contends that the Eleventh Amendment to the Constitution warrants dismissal of all claims brought against MDOT, MTA, and MDTA. As discussed, I shall consider the motion to dismiss on the basis of the Eleventh Amendment as a motion pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction. *See Abril v. Comm'w of Va.*, 145 F.3d 182, 184 (4th Cir. 1998) (affirming the district court's dismissal of a claim barred by state sovereignty immunity under Rule 12(b)(1)).

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." The Eleventh Amendment did not create sovereign immunity. Rather, it preserved the sovereign immunity that the states enjoyed prior to the formation of the Union. *See Alden v. Maine*, 527 U.S. 706, 724 (1999); *see also Sossamon v. Texas*, 563 U.S. 277, 284 (2011). The preeminent purpose of state sovereign immunity is "to accord states the dignity that is consistent with their status as sovereign entities . . . ." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002).

Thus, absent waiver or a valid congressional abrogation of sovereign immunity, the states enjoy immunity from suits brought in federal court by their own citizens, even though the text of

the Eleventh Amendment does not explicitly address such a scenario. *See Hans v. Louisiana*, 134 U.S. 1, 3 (1890); *see also Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."). In other words, under the Eleventh Amendment, a private individual is barred from bringing a suit against a state in federal court to recover damages, unless an exception to sovereign immunity applies. *See Coleman v. Court of Appeals of Md.*, 556 U.S. 30, 35 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense."); *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States." (internal quotation marks and citation omitted)).

Of import here, sovereign immunity also bars suit against an instrumentality of a state, sometimes referred to as an "arm of the state." *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *see also Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013); *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005).

The MDOT is a "principal department" of the Maryland State government. *See* Transp. § 2-101. The MDTA is a statutorily created unit within the MDOT. *See* Transp. § 4-201. The Secretary of the MDOT, who is appointed by the Governor with the advice and consent of the State Senate, *id*.

§ 2-102(a), serves as Chairman of the MDTA. *See id*. § 4-202(a). In addition to the Chairman, the MDTA consists of eight members appointed by the Governor with the advice and consent of the State Senate. *Id*. § 4-202(b).

The MTA is one of nine "modal administrations" within the MDOT, *see* Transp. § 2-107(a)(3), and is responsible for administering Maryland's mass transit system. *Id*. § 7-204. The Secretary of MDOT bears statutory responsibility for the budgets of each of its modal administrations. *See Id*. § 2103(a).

It is clear that MDOT, inclusive of the MTA and the MDTA, is an arm of the State. *See McDaniel v. Md.*, RDB-10-00189, 2010 WL 3260007, at *5 (D. Md. 2010) (finding that MDOT, as an agency of the State, is entitled to sovereign immunity under the Eleventh Amendment); *Beckham v. Nat'l R.R. Passenger Corp.*, 569 F. Supp. 2d 542, 556 (D. Md. 2008) (determining that sovereign immunity extends to MTA); *Kess v. Md.*, H-00-3134, 2001 WL 85179, at *3 (D. Md. Jan. 29, 2001) (concluding that MDTA enjoys the same sovereign immunity as the State).

The Court of Appeals for the Fourth Circuit has noted three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state. In *Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244 (4th Cir. 2012), the Court said, *id.* at 249 (internal quotations omitted):

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.,* 535 U.S. 613, 618 (2002).

None of the exceptions is applicable here.

First, as noted, Congress has the power to abrogate a state's sovereign immunity, but must do so pursuant to a valid grant of constitutional authority. *Garrett*, 531 U.S. at 363; *Lee-Thomas*, 666 F.3d at 249. This exception is inapplicable here, because the Supreme Court has made clear that Congress did not intend to abrogate a state's Eleventh Amendment immunity under § 1983. *See Quern v. Jordan,* 440 U.S. 332, 341 (1979).

The second exception involves the doctrine of *Ex parte Young*, 209 U.S. 123, 159-60 (1908). *Ex parte Young* provides an exception to the general law, permitting prospective injunctive relief to correct an ongoing violation if the suit is brought against state officials in their official capacities. *Id.* To determine if the exception applies, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Manion v. N.C. Med. Bd.*, 693 F. App'x 178, 180-81 (4th Cir. 2017) (citation omitted); *see Verizon Md., Inc. v. PSC*, 535 U.S. 635, 645 (2002).

Johnson contends: "With some minimal discovery, Plaintiff would be properly able to pursue claims against individual officers in their official capacities pursuant to the *Ex Parte Young* doctrine." ECF 7 at 3. This argument is unavailing. Notably, in the Complaint, Johnson seeks monetary damages only. He requests prospective relief for the first time in his Opposition. *See* ECF 1 at 8. Notably, "[t]he ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) (*citing United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006)). But, even assuming Johnson properly alleged a claim for injunctive relief, he does not specify the ongoing violations of federal law that he seeks to enjoin. ECF 7 at 3. Therefore, the second exception is not applicable here.

Third, state sovereign immunity bars an individual from maintaining a suit for money damages against the State of Maryland or one of its agencies, unless there is an express legislative waiver of immunity. *State v. Sharefeldin*, 382 Md. 129, 140, 854 A.2d 1208, 1214 (2004); *Ritchie v. Donnelly*, 324 Md. 344, 369, 597 A.2d 432, 444 (1991); *Balt. Police Dep't v. Cherkes*, 140 Md. App. 282, 306, 780 A.2d 410, 424 (2001); *Samuels v. Tschechtelin*, 135 Md. App. 483, 522, 763 A.2d 209, 230 (2000). *See also Lapides*, 535 U.S. at 618; *Lee-Thomas*, 666 F.3d at 249. Although a state may waive its Eleventh Amendment sovereign immunity and permit suit in federal court, *see, e.g., Lapides*, 535 U.S. at 618; *Lee-Thomas*, 666 F.3d at 249, Maryland has not waived its Eleventh Amendment immunity to a suit of this kind in federal court. *See, e.g., Beckham v. Nat'l R.R. Passenger Corp.*, 569 F. Supp. 2d 542, 550 (D. Md. 2008) (holding that general waiver of sovereign immunity in Transp. § 7-702 does not make MTA subject to § 1983 claims in federal court); *Weide v. Mass Transit Admin.*, 628 F. Supp. 247, 250-51 (D. Md. 1985) (same).

The test to determine whether a State has waived its immunity from suit in federal court is a "stringent" one. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 240 (1985), *superseded on other grounds, as recognized in Lane v. Pena*, 518 U.S. 187, 198 (1996). Under *Atascadero*, a court may find that a state has waived its Eleventh Amendment immunity "only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." *Id.* (internal quotation marks and alteration omitted); *accord Lee-Thomas*, 666 F.3d at 250-51.

Furthermore, the Supreme Court has made clear that Congress did not intend to abrogate a state's Eleventh Amendment under § 1983. *See Quern v. Jordan*, 440 U.S. 332, 341 (1979). Moreover, even if Maryland had waived its immunity, it is well established that states and their agencies are not considered "persons" under 42 U.S.C. § 1983. As such, states or their agencies

are not subject to federal civil rights claims under the statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989).

Accordingly, Johnson's claims against MDOT, MTA, and MDTA are subject to dismissal based on sovereign immunity.

### B. Failure to State a Claim

What remains are Johnson's claims against the Doe Defendants. As stated, Johnson alleges that these defendants violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights.

Section 1983 of Title 42 of the United States Code states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory...subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."

Section 1983 provides a private cause of action for constitutional violations by persons acting under color of state law. *See, e.g., Filarsky v. Deila*, 566 U.S. 377, 383 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 135 S. Ct. 1983 (2015). However, § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver,* 510 U.S. 266, 271, (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 707 (1999); *see also West v. Atkins*, 487 U.S. 42, 49 (1988); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928-930 (1982).

To state a claim under § 1983, a plaintiff must allege: (1) that the defendant, a person,

"deprived [the plaintiff] of a right secured by the Constitution and laws of the United States"; and (2) that the defendant acted "under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson,* 249 F.3d 301, 310 (4th Cir. 2001) (internal quotation marks and citation omitted). *See West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929 (1982)). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cty. v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). In *Philips*, 572 F.3d at 181, the Court said: "[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient." (citations and internal quotation marks omitted).

Thus, in order to assert successfully a claim of violation of constitutional rights under § 1983, the defendant must be a state actor. *Mentavlos*, 249 F.3d at 313. Specifically, the person charged with the civil rights violation must be a state official; someone who has acted with a state official; someone who has obtained significant aid from a state official; or someone whose conduct is somehow attributable to the state. *Id*.

Here, it is undisputed that the Doe Defendants are State actors. As indicated, Johnson claims that John Doe #1 is a MDTA officer; John Doe #2, a MDTA supervisor; Jane Doe #3, a MDTA employee; and John Doe #4, is a MDTA commissioner. *See* ECF 1.[4] However, their personal identities remain unknown to plaintiff. Therefore, he seeks limited discovery to ascertain their identities.

The State argues that Johnson's allegations do not satisfy minimum pleading standards. ECF 3-1 at 4-6. It avers: "Plaintiff has not asserted an unlawful traffic stop. He has asserted a detention, an arrest, a temporary confinement, and release based upon a valid, outstanding warrant for a Reginald Johnson, whom Plaintiff acknowledges is his name. Plaintiff further admits that this has been a problem for him in his interactions with at least one other governmental agency." *Id*. at 6.

In his Opposition, Johnson maintains that he has alleged a plausible claim based on his unlawful arrest and detention. ECF 7 at 5. However, he requests limited discovery to ascertain the identities of the Doe Defendants, such that "the Court may be in a much better position to decide the merits of the instant motion." *Id*.

As Johnson acknowledges, federal courts have generally frowned upon "John Doe" defendants. *Id*. at 2. The Fourth Circuit has made clear that Doe suits are permissible only against "real, but unidentified, defendants." *Schiff v. Kennedy*, 691 F.2d 196, 197 (4th Cir. 1982). A district court may dismiss an action, without prejudice, "if it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court." *Id*. at 198; *see also Pair v. Alexander*, GLR-16-1492, 2018 WL 1583472, at *1 n.2 (Apr. 2, 2018) (dismissing claims against John Doe defendants on the ground the plaintiff "d[id] not raise specific

---

[4] I express no opinion on any applicable immunity defenses.

allegations against the John Doe defendants"); *Massey v. Ojaniit*, 759 F.3d 343, 347 n.1 (4th Cir. 2014) (affirming district court's dismissal, without prejudice, of claims against "John and Jane Does, #1-10," where the plaintiff's allegations did not suggest that the identities of such persons could be ascertained through discovery or intervention by the court).

Moreover, courts have found that the use of a "John Doe" designation is not permissible "if the plaintiff's ignorance of the defendant's true identity is the result of willful neglect or lack of reasonable inquiry." *Saunders v. Boddie-Noell Enters., Inc.*, 7:08-110, 2008 WL 2553047, *2 (W.D. Va. June 25, 2008) (citing 2 J. Moore et al., *Moore's Federal Practice* § 10.02(2)(d)(l) (3d ed. 2005)); *see also Williams v. 21st Mortg., Corp.*, PX-16-1210, 2017 WL 1133706, at *4 (D. Md. Mar. 27, 2017) (dismissing claims against Doe defendants because the plaintiff "had more than sufficient time to conduct a reasonable inquiry into [their] true identity").

In this case, the Doe Defendants are "real, but unidentified." *Schiff*, 691 F.2d at 197. Johnson maintains that, through limited discovery, he can readily ascertain the identities of the officers involved in his arrest and detention. ECF 7 at 2. It would seem likely that the identities could be ascertained quite easily. This leads to the State's next argument.

In its Reply, the State points out that the incident occurred more than three years ago, and that plaintiff "had more than ample opportunity" to ascertain the identities of the Doe Defendants. ECF 17 at 5. In particular, the State argues that plaintiff could have submitted a request pursuant to the Maryland Public Information Act ("MPIA"), Md. Code (2014 Repl. Vol., 2017 Supp.), §§ 10-611 *et seq*. of the State Government Article. *Id*. The MPIA "allows generally for the inspection and receipt of copies of public records." *Certain Underwriters at Lloyd's, London v. Cohen*, 785 F.3d 886, 893 (4th Cir. 2015) (quotation marks omitted) (citing *Waterkeeper Alliance, Inc. v. Md. Dep't of Agric.*, 439 Md. 262, 268, 96 A.3d 105, 108 (2014)).

Indeed, there are a number of ways to submit a records request to the MDTA and the MTA. The MDOT Public Information Act ("PIA") website allows for the electronic submission of a general records request with the MDTA and MTA.[5] Once the request is fulfilled and the responsive records are found, an appointment with a PIA representative may be scheduled to review the records in person. More specifically, to obtain an official copy of an MDTA police report, a request may be submitted by mail or in person for a fee, or by email at no cost.[6]

Through any of these available means, it appears that plaintiff had various ways to conduct an inquiry to ascertain the identities of one or more of the Doe Defendants. However, I cannot determine here whether plaintiff made an effort to obtain the identities. But, plaintiff has raised specific allegations against each Doe Defendant. Therefore, I shall permit limited discovery for the sole purpose of enabling plaintiff to determine the identities of such persons, without prejudice to their right to claim that suit against them is untimely or does not relate back.

Accordingly, I shall deny the Motion as to plaintiff's claims against the Doe Defendants.

## IV. Conclusion

For the reasons stated above, I shall grant the Motion in part and deny it in part.

---

[5] *MDOT Public Information Act (PIA)*, MD. DEP'T OF TRANS., http://www.mdot. maryland.gov/newMDOT/Policy_Affairs/pia.html (last visited Oct. 2, 2018). *See also Maryland Department of Transportation Public Information Act (PIA) Form Request*, MD. DEP'T OF TRANS., http://www.mdot.maryland.gov/newMDOT/Policy_Affairs/PIARequestForm.html (last visited Oct. 2, 2018).

[6] *Central Records Unit*, MD. TRANS. AUTH., http://mdta.maryland.gov/Police/ Central_Records.html (last visited Oct. 2, 2018). *See also Maryland Transportation Authority Police Report Request*, MD. TRANS. AUTH., http://mdta.maryland.gov/sites/default/files/ Files/Police/reportRequest.pdf (last visited Oct. 2, 2018).

I shall permit plaintiff to conduct limited discovery to ascertain the identities of the Doe Defendants. Plaintiff shall thereafter file an amended complaint as set forth in the Order. If the suit is not amended by that date, the Clerk shall be directed to CLOSE the case.

An Order follows.

Date: November 21, 2018

/s/
Ellen L. Hollander
United States District Judge